IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT WINNER et al.,                  *
                                       *
            Plaintiffs,                *
                                       *
    vs.                                *        Civil Action No. ADC-20-3420
                                       *
KELCO FEDERAL CREDIT UNION,            *
                                       *
            Defendant.                 *
                                       *

* * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM OPINION

Plaintiffs Robert and Lynne Winner ("Plaintiffs") filed this Motion for Sanction of Default Judgment[1] (ECF No. 31) in accordance with this Court's September 2, 2021 Order (ECF No. 28) granting Plaintiffs' uncontested Motion for Sanctions (ECF No. 26). Defendant Kelco Federal Credit Union ("Defendant" or "Kelco") responded in opposition and filed a supplemental response. ECF Nos. 33, 34. Plaintiffs then replied. ECF No. 35. After considering the Motion and responses thereto (ECF Nos. 31, 33–35), the Court finds that no hearing is necessary. Loc.R. 105.6 (D.Md. 2021). In accordance with this Opinion, Plaintiffs' Motion is hereby GRANTED IN PART and DENIED IN PART.

### FACTUAL BACKGROUND

On or around October 14, 2005, Plaintiffs entered into a mortgage loan agreement and Note with Defendant to purchase Lots 38 and 39 in Lakewood, a subdivision located in Mineral County, West Virginia ("the Lots"). ECF No. 1 ¶ 8; ECF No. 31-2 ¶ 3. The Note agreement was secured by a Deed of Trust. ECF No. 1. ¶ 10; ECF No. 31-2 ¶ 3. On or around August 29, 2008, Plaintiffs

---

[1] Plaintiffs title their Motion a "Motion for Sanction of Default," but request default judgment in accordance with Fed.R.Civ.P. 37(b)(2)(A)(vi). *See* ECF No. 31 at 1.

then entered into a refinancing agreement and Note with Defendant. ECF No. 1 ¶ 10. Under the 2008 Note, Plaintiffs borrowed $63,000 at 10% APR that was to be paid in 119 monthly payments of $608.70 and a balloon payment of $46,243 that would become due on September 1, 2018. *Id.* ¶ 11. The Note provided that Defendant was to apply payments in the following order: first to "collection costs, then to any late charges, the FINANCE CHARGE owing, and then to the unpaid principal balance." *Id.* ¶ 12. The Deed of Trust, however, provided that payments be applied in the following order: "(a) interest due under the Note; (b) principal due under the Note." *Id.* ¶ 13.

Soon after their first payment in October of 2008, Plaintiffs requested to make their monthly loan payments on a bi-weekly basis (two payments per month), which Defendant approved. *Id.* ¶ 14. Plaintiffs thus began making bi-weekly payments of $304.35. *Id.* ¶ 15; ECF No. 31-2 ¶ 8. However, on or around July 15, 2009, Defendant started to record Plaintiffs' bi-weekly payments as partial payments, putting Plaintiffs' account in arrears. ECF No. 1 ¶ 17. Further, Defendant applied Plaintiffs' payments to other accounts, including to Plaintiffs' Visa and savings accounts. *Id.* ¶¶ 19, 21, 29. In so doing, Defendant failed to apply Plaintiffs' payments to their account in a manner required by the Note and Deed of Trust. *Id.* ¶ 23. Defendant also began charging Plaintiffs late fees despite Plaintiffs making their agreed-upon bi-weekly payments. *Id.* ¶¶ 24–25. The Plaintiffs then resumed monthly payments. *Id.* ¶ 25. Moreover, Defendant, with no requirement to do so, paid property taxes on the Lots totaling $1,300.05 and added the amount paid to the loan principal. *Id.* ¶ 26.

In one instance on December 7, 2011, Ms. Winner contacted Defendant employee Bill Smouse to determine where the monthly payment had been applied, to which Mr. Smouse responded: "TO MY BEER FUND. WHERE ELSE? NOH – IT WENT TO THE LOAN. THERE IS A PARTIAL PMT AND I USED SOME OF THE PARTIAL PMT TO PAY YOUR VISA'S."

*Id.* ¶ 28–29. In another instance, Mr. Smouse told Plaintiffs their payment was past due when it had merely been missed at the bottom of the night drop box. *Id.* ¶ 31. Despite identifying the error and having received timely payment, Defendant showed Plaintiffs' account as one month in arrears. *Id.* ¶ 32. Throughout the loan, Plaintiffs made timely payments, but Defendant continued to charge and deduct late fees. *Id.* ¶ 33; ECF No. 31-2 ¶ 11. In 2016, Ms. Winner made additional payments of approximately $304 to the principal but Defendant misapplied them as partial payments and then imposed additional improper late fees. ECF No. 1 ¶ 37. In total, Defendant wrongfully charged Plaintiffs 71 late fees of $30.44 each and totaling $2,161.24. *Id.* ¶ 38.

Plaintiffs discussed the possibility of refinancing their loan with Defendant employee Gil Frankenberry prior to their September 1, 2018 balloon payment due date. *Id.* ¶ 39. Mr. Frankenberry told Plaintiffs that they would not qualify for refinancing unless they paid down their debt. *Id.* ¶ 40. After the balloon payment became due without a refinancing agreement in place, Mr. Frankenberry demanded Plaintiffs "G**d*mn f****n' pay us off." *Id.* ¶ 41. Defendant sent Plaintiffs the first right to cure letter on June 3, 2019, stating a balloon payment of $58,872.66 had become due. *Id.* ¶ 42. This amount was $12,629.60 more than the agreed upon balloon payment in the 2008 Note. *Id.* Defendant contended the increase was caused by the accrued late fees and property taxes. *Id.* ¶ 43. Defendant then sent a second right to cure letter on or around October 16, 2019, stating that a balloon payment of $61,532.12 was due and that $3,339.10 would cure the default. *Id.* ¶ 44. On November 19, 2019, the Substitute Trustee sent Plaintiffs a Notice of Trustee's Sale, with the sale occurring on February 14, 2020. *Id.* ¶ 45.

Ms. Winner later identified that her Experian credit report showed that her account had been foreclosed in December of 2019. *Id.* ¶ 50. She disputed the foreclosure and her credit report was updated in July 2020 to report that the account was "charged off" as of March 2020, as

opposed to foreclosed. *Id.* ¶ 52. Ms. Winner again disputed the accuracy of the report, but no changes were made. *Id.* ¶¶ 53–54.

## PROCEDURAL BACKGROUND

On November 24, 2020, Plaintiffs, individually and on behalf of others similarly situated, brought suit in this Court for the following individual allegations—Count I: Declaratory Judgment; Count II: Breaches of Contract; Count III: Violations of Maryland Consumer Law; Count IV: Fraud; Count V: Violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"); Count VI: Unjust Enrichment; Count VII: Violations of the Fair Credit Reporting Act ("FCRA"), and the following class allegations—Count VIII: Class Action Allegations; Count IX: Violations of Maryland Consumer Law; and Count X: Negligence.[2] ECF No. 1 ¶¶ 57–167. Defendant filed an Answer on December 24, 2020. ECF No. 5.

Plaintiffs served their First Combined Discovery Requests to Defendant on February 5, 2021, and responses were due on March 7, 2021. ECF No. 26 at 1. Defendant did not respond until contacted by Plaintiffs' counsel on March 9, 2021. *Id.* Defendant then agreed to respond by March 26, 2021 but failed to do so. *Id.* Plaintiffs could not reach Defendant and then filed an uncontested Motion to Compel that the Court granted. *Id.* at 1–2. Plaintiffs' counsel and Defendant then agreed that Defendant would provide responses by April 30, 2021, however Defendant's response "provided only unverified responses to interrogatories" and attached no documents requested for production. *Id.* Plaintiffs finally received some documents on May 4, 2021 and verification of interrogatories on May 11, 2021. *Id.* Moreover, Defendant's Rule 30(b)(6) deponent was not prepared to discuss topics or provide documents named in the deposition notice. *Id.* The deposition

---

[2] On January 26, 2021, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302. ECF No. 10.

had to be continued. *Id.* ECF No. 33 ¶ 3. In light of Defendant's noncompliance with discovery requests, Plaintiffs moved for sanctions, Defendant again did not respond, and the Court granted the motion on September 2, 2021. ECF No. 31 at 1. Defendant was to make full production to Plaintiffs' requests within 14 days of that Order, but again failed to do so. *Id.* at 2. The Court's Order further stated: "In the event Defendant fails to comply with discovery, Plaintiffs may file a Motion for Default Judgment" pursuant to Rule 37(b)(2)(A)(vi). ECF No. 28 at 1. Accordingly, Plaintiffs now bring this Motion for Sanction of Default Judgment. ECF No. 31 at 2. Defendant, represented by new counsel, responded in opposition and stated that it was "unclear why prior counsel ceased cooperating in discovery," but it was "through no fault of Kelco." ECF No. 33 ¶ 4. Moreover, Defendant contends that its new counsel is now working with Plaintiffs' counsel in "a diligent effort to rectify the discovery deficiencies and to ensure that there are no further delays in this matter." *Id.* ¶ 5. Defendant filed a supplemental response in opposition detailing its efforts to respond to discovery issues, and Plaintiffs replied. ECF Nos. 34, 35.

## DISCUSSION

### A. Standard of Review

Fed.R.Civ.P. 37(b)(2)(A) permits the Court to issue "further just orders" where a party or that party's officer has failed to obey its Order to provide or permit discovery. Such action by the Court may include "rendering a default judgment against the disobedient party." Fed.R.Civ.P. 37(b)(2)(A)(vi). The sanction of default judgment is reserved for "the most flagrant case, where the party's noncompliance represents bad faith and callous disregard for the authority of the [Court] and the Rules." *Mut. Fed. Savs. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989). *See Quan v. TAB GHA F&B, Inc.*, No. CV TDC-18-3397, 2021 WL 1652817, at *1 (D.Md. Apr. 26, 2021) (discussing default judgment as one of the "most serious sanctions").

A "clear and explicit warning of dismissal" is not "a necessary element before imposing a Rule 37 sanction." *Rangarajan v. Johns Hopkins Univ.*, 917 F.3d 218, 225–26 (4th Cir.), *cert. denied,* 139 S.Ct. 2762 (2019). However, "[c]ourts in the Fourth Circuit generally impose dispositive sanctions only after providing a 'clear and explicit' warning of the possibility of such a sanction to the noncompliant party." *Quan*, 2021 WL 1652817, at *1.

In considering whether to award default judgment, the Court "accepts as true the well-pleaded factual allegations in the complaint as to liability." *United States ex rel. Durrett-Sheppard Steel Co. v. SEF Stainless Steel, Inc.*, No. CIV.A. RDB-11-2410, 2012 WL 2446151, at *1 (D.Md. June 26, 2012). But it independently determines Plaintiffs' alleged damages. *Quan v. TAB GHA F&B, Inc.*, No. CV TDC-18-3397, 2021 WL 4129115, at *1 (D.Md. Sept. 10, 2021).

### B. Default Judgment

The Court must first determine whether Defendant's noncompliance with discovery requests and this Court's Orders warrants sanction, and more specifically, the severe sanction of default. The U.S. Court of Appeals for the Fourth Circuit has provided a four-part test to determine what sanctions to impose under Rule 37, including: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998). Case law from this circuit guides the Court's analysis of these factors.

First, "[b]ad faith can be established by 'noncompliance [or] haphazard compliance . . . [with] discovery orders." *Quan*, 2021 WL 1652817, at *2 (alterations in original) (quoting *LeCompte v. Manekin Constr., LLC*, 573 B.R. 187, 195 (D.Md.), *aff'd,* 706 F.App'x 811

(4th Cir. 2017)). Relevant here, this Court has found bad faith based on a party's failure to respond to discovery responses and depositions, even when attributing the blame to the party's attorney. *See Anderson*, 155 F.3d at 504 (finding bad faith where a party "stonewalled" discovery and missed deadlines despite asserting failures were due to attorney error); *DeLoatch v. Baywood Hotels, Inc.*, No. CV JKB-18-3811, 2020 WL 7230758, at *3 (D.Md. Dec. 8, 2020), *motion for relief from judgment denied,* 2021 WL 1061218 (D.Md. Mar. 18, 2021), and *appeal dismissed sub nom.* No. 21-1088, 2021 WL 3124362 (4th Cir. Mar. 30, 2021) (concluding the plaintiff acted in bad faith by intentionally defying the Court's order, even assuming some failures were attributable to her "erstwhile attorney's inattention and misconduct"); *First Mariner Bank v. Resol. L. Grp., P.C.*, No. CIV. MJG-12-1133, 2014 WL 1652550, at *18 (D.Md. Apr. 22, 2014) (finding bad faith where defendants "obfuscated and obstructed discovery since its inception").

Second, this Court has found significant prejudice existed where a party failed to respond to discovery requests, *see Quan*, 2021 WL 1652817, at *3, refused to sit for a deposition, *see DeLoatch*, 2020 WL 7230758, at *3, and demonstrated "continued noncompliance with discovery requests." *See Robertson v. DECO Sec., Inc.*, No. WDQ-09-3093, 2010 WL 3781951, at *5 (D.Md. Sept. 22, 2010).

Third, the Court must deter parties who ignore its orders and discovery obligations because it undermines parties' ability to obtain information necessary to resolve the dispute and "seriously undermines the truth-seeking function of the Court." *DeLoatch*, 2020 WL 7230758, at *3 (quoting *Woodbury v. Victory Van Lines*, Civ. No. TDC-16-2532, 2019 WL 2135649, at *5 (D.Md. May 16, 2019)). *See Robertson*, 2010 WL 3781951, at *5 ("Conduct such as 'stalling and ignoring direct orders of the court . . . must obviously be deterred.'" (quoting *Mut. Fed. Sav. & Loan Ass'n,* 872 F.2d at 93)). A party's "failure to respond to [opposing party's] discovery requests

7

combined with her subsequent willful disregard of a Court order undermines this Court's ability to manage this case effectively and fairly." *Robertson*, 2010 WL 3781951, at \*5.

Finally, unresponsiveness to an opposing party's good faith efforts and the Court's orders in the discovery process "indicates that further sanctions other than dismissal will not be effective." *Id.* "Lesser sanctions did not deter such behavior." *Anderson*, 155 F.3d at 505.

Applying the Fourth Circuit's factors here, the Court concludes that all four factors support the severe sanction of default judgment. Defendant has demonstrated bad faith in its repeated failures to comply with discovery requests and this Court's Orders. *Id.* at 504. Defendant cannot avoid sanction by claiming its unresponsiveness and lack of compliance was solely the fault of counsel, especially because the failures were repeated and frequent, spanning months and multiple discovery requests, motions, and Orders. *See DeLoatch*, 2020 WL 7230758, at \*3. Moreover, the Court's September 2, 2021 Order gave Defendant the "clear and explicit" warning that continued noncompliance would result in a sanction of default judgment. *See* ECF No. 28; *Quan*, 2021 WL 1652817, at \*1. Defendant is responsible for presenting an unprepared Rule 30(b)(6) deponent for deposition, for failing to respond to discovery requests, and for failing to comply with the Court's Orders. *See* ECF Nos. 18, 28, 30. Obtaining new counsel does not remedy these bad faith actions.

Defendant's failures also resulted in a great prejudice affecting Plaintiffs' ability to litigate their case. *See Quan*, 2021 WL 1652817, at \*3; *DeLoatch*, 2020 WL 7230758, at \*3; *Robertson*, 2010 WL 3781951, at \*5. Furthermore, "[t]he need to deter this sort of behavior is clear," where Defendant has ignored court orders and its discovery obligations. *See DeLoatch*, 2020 WL 7230758, at \*3. Similarly, Defendant's repeated failures indicate that further sanctions would not be effective, as this Court's Orders have yet to be followed. *See Robertson*, 2010 WL 3781951, at \*5. Taken together, the factors show that Defendant's failures represent "bad faith and callous

8

disregard for the authority of the [Court] and the Rules" such that default judgment is warranted. *See Mut. Fed. Savs. & Loan Ass'n,* 872 F.2d at 92.

### C. Defendant's Liability

The Court now must determine Defendant's liability by accepting the allegations of Plaintiffs' Complaint as true. I address each count in turn.[3]

Count I: Declaratory Judgment

In Count I, Plaintiffs seek declaratory judgment that the foreclosure is void. ECF No. 1 at ¶ 62. Plaintiffs did not brief the issue of declaratory judgment in their Motion. Claims for declaratory relief under 28 U.S.C. § 2201 permit the Court to "declare the rights and other legal relations of any interested party seeking such declaration" upon an appropriate pleading. *Scottsdale Ins. Co. v. Bounds,* No. CIV. BEL-11-2912, 2012 WL 1576105, at *4 (D.Md. May 2, 2012) (quoting 28 U.S.C. § 2201). While the Court may award declaratory relief in default judgment, *see id.* at *3, courts in this circuit have opined that declaratory judgment after foreclosure is not a proper remedy because "the alleged wrong or questionable conduct has already occurred." *Ramirez–Alvarez v. Aurora Loan Servs., LLC,* No. 01:09–cv-1306, 2010 WL 2934473, at *2 (E.D.Va. July 21, 2010). *See Harrell v. Caliber Home Loans, Inc.,* 995 F.Supp.2d 548, 551–52 (E.D.Va. 2014). Declaratory relief is a forward-looking remedy and thus it not timely when damages (like foreclosure) have already occurred. *See Tapia v. U.S. Bank, N.A.,* 718 F.Supp.2d 689, 696 (E.D.Va. 2010) *aff'd,* 441 F.App'x. 166 (4th Cir. 2011); *In re Minh Vu Hoang,* No. CV DKC 18-0443, 2019 WL 1239747, at *4 (D.Md. Mar. 18, 2019), *reconsideration denied sub*

---

[3] A federal court exercising diversity jurisdiction must apply the substantive law of the state in which the court is located. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938). Therefore, the Court will apply Maryland law to analyze this Motion with respect to Plaintiffs' claims that are not federal or West Virginia statutory claims.

*nom.* 2019 WL 1958564 (D.Md. May 2, 2019). Considering this case law and Plaintiffs' failure to assert otherwise, Plaintiffs have not shown declaratory judgment is a proper remedy.

      <u>Count II: Breaches of Contract</u>

      In Count II, Plaintiffs allege that Defendant is liable for breaches of contract by, *inter alia*, charging late fees not authorized under the Note or Deed of Trusts and applying loan payments to other accounts not agreed to under the Deed of Trust. ECF No. 1 ¶¶ 65–66. To succeed on a breach of contract claim, Plaintiffs must show a contractual obligation owed by Defendant and a material breach of the contractual obligation. *RRC Northeast, LLC v. BAA Maryland, Inc.*, 413 Md. 638, 655 (2010). A breach of contract is the "failure, without legal excuse, to perform any promise that forms the whole or part of a contract." *Kunda v. Morse*, 229 Md.App. 295, 304 (2016) (quoting *Weaver v. ZeniMax Media, Inc.*, 175 Md.App. 16, 51 (2007) (citations omitted)). A breach is material if it affects the contract's purpose in an important way or goes to the "essence" of the agreement. *AirFacts, Inc. v. de Amezaga*, 502 F.Supp.3d 1027, 1044 (D.Md. 2020) (quoting 23 *Williston on Contracts*, § 63:3. (4th Ed. 2002) (citations omitted)).

      Here, Plaintiffs' claim centers on their financing of the Lots via the Note and Deed of Trust. ECF No. 1 ¶¶ 8–13; ECF No. 31-2 ¶ 3. Plaintiffs' Complaint sets forth provisions of the Note and Deed of Trust that are in conflict regarding the order with which Defendant was to apply payments. ECF No. 1 ¶¶ 12–13. Moreover, Plaintiffs state that Defendant then violated the terms of the agreements by improperly applying Plaintiffs' payments to other accounts and not applying the payments in the timely manner required. *Id.* ¶¶ 16, 21, 23, 29. As such, Plaintiffs have successfully pled that Defendant had a contractual obligation to Plaintiffs—the order of which to apply payments—and a material breach of that obligation by failing to apply the payments to the proper account for the mortgage, the essence of the agreement. *See AirFacts, Inc.*, 502 F.Supp.3d at 1044.

10

The result was the foreclosure on the Lots. Accordingly, Plaintiffs' alleged facts, accepted as true, show Defendant is liable for breaching its contract with Plaintiffs by failing to properly apply payments in accordance with the applicable contracts.

Count III: Violations of Maryland Consumer Law

In Count III, Plaintiffs allege violations of "Maryland Consumer Law," citing to, *inter alia,* the Maryland Consumer Protection Act ("MCPA").[4] ECF No. 1 ¶¶ 70–94. The MCPA prohibits a person from engaging in an "unfair, abusive, or deceptive trade practice" in the collection of consumer debts. Md. Code Ann., Com. Law § 13-303. "Unfair, abusive, or deceptive trade practices" includes false or misleading statements or representations that have "the capacity, tendency, or effect of deceiving or misleading consumers." *Id.* § 13-301. To succeed in an MCPA claim, Plaintiffs must allege: "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Stewart v. Bierman,* 859 F.Supp.2d 754, 768 (D.Md. 2012), *aff'd sub nom. Lembach v. Bierman,* 528 F.App'x 297 (4th Cir. 2013) (citing *Lloyd v. Gen. Motors Corp.,* 397 Md. 108, 143 (2007)). *See Brooks v. Cama Self Directed IRA, LLC,* No. CV JKB-18-2299, 2019 WL 418412, at \*12 (D.Md. Jan. 31, 2019) (explaining the same). Reliance requires that Defendant's "misrepresentation 'substantially induced [their] choice.'" *See Brooks,* 2019 WL 418412, at \*12 (quoting *Gibson v. Nationstar Mortg., LLC,* Civ. No. GJH-14-3913, 2015 WL 302889, at \*4 (D.Md. Jan. 21, 2015)).

---

[4] Because the Court concludes the asserted facts support a finding that Defendant is liable for violating the MCPA and thus Plaintiffs' Count III, the Court need not consider whether Defendant is also liable for the additional violations plead with respect to Md. Code Ann., Com. Law § 14-202. However, it does note the "abusive" statements on which Plaintiffs rely will likely not suffice to show Defendant's liability for Md. Code Ann. Com. Law § 14-201(b). *See Dick v. Mercantile-Safe Deposit and Trust Co.,* 63 Md.App. 270, 279 (1985) (explaining that the statute required that the language be "flagrantly" or "greatly" abusive and that a collector's remark that he did not "give a damn" and a reference to a "damn airplane" were not sufficient).

Plaintiffs here allege that (1) Defendant, in collecting Plaintiffs' debt, misrepresented that Plaintiffs could make bi-weekly payments and that those payments would be properly attributed to the relevant account; (2) Plaintiffs relied upon that assurance and made bi-weekly payments; and (3) Defendant then misapplied the payments and charged improper late fees. ECF No. 1 ¶¶ 14–19, 37–38, 46. Therefore, Plaintiffs' Complaint does put forth facts that show Defendant is liable for violating the MCPA.

Count IV: Fraud

In Count IV, Plaintiffs allege Defendant committed fraud by failing to properly process and apply Plaintiffs' bi-weekly mortgage payments. ECF No. 1 ¶ 96. To succeed in a claim for fraud, Plaintiffs must show: (1) Defendant made a false representation to Plaintiffs; (2) the falsity of the representation was known to Defendant or was made with reckless indifference as to its truth; (3) "the misrepresentation was made for the purposes of defrauding" Plaintiffs; (4) Plaintiffs relied on the misrepresentation; and (5) Plaintiffs suffered compensable injury as a result of the misrepresentation. *Gourdine v. Crews*, 405 Md. 722, 758 (2008) (quoting case law) (citations omitted). Plaintiffs must prove each element by clear and convincing evidence. *Id.* Importantly, Plaintiffs must plead fraud with particularity, meaning they must:

> [I]identify who made what false statement, when, and in what manner (*i.e.*, orally, in writing, etc.); why the statement is false; and why a finder of fact would have reason to conclude that the defendant acted with scienter (*i.e.*, that the defendant either knew that the statement was false or acted with reckless disregard for the truth) and with the intention to persuade others to rely on the false statement.

*McCormick v. Medtronic, Inc.*, 219 Md.App. 485, 528 (2014).

Plaintiffs here have failed to plead fraud with particularity. Plaintiffs' argument centers on Defendant's affirmative representation that it would accept bi-weekly loan payments yet it failed to do so. Plaintiffs' Complaint stated: "Soon after their first payment in October 2008, the Winners

asked Kelco if they could make their monthly loan payments in two installments. Kelco assured the Winners that this payment schedule was acceptable." ECF No. 1 ¶ 14. This statement fails to identify who made the statement (besides, presumably, a Defendant employee), when the statement was made (except that it was after October of 2008), how the assurance was made, and facts that showed that Defendant intended for Plaintiffs to rely on its statement that it knew to be false or had reckless disregard for the truth. *See McCormick*, 219 Md.App. at 528. Such allegations do not satisfy the particularity and scienter requirements to succeed on a claim of fraud.

Count V: Violations of the WVCCPA

In Count V, Plaintiffs allege further that Defendant violated the WVCCPA, specifically with regard to balloon payments, the use of fraudulent, deceptive, or misleading representation to collect claims, and the use of profane and obscene language to unreasonably abuse Plaintiffs. ECF No. 1 ¶¶ 104–25. Plaintiffs' loan with Defendant is a "consumer loan" within the meaning of the WVCCPA, meaning: "a loan made by a person regularly engaged in the business of making loans" where: the debtor is a person; the debt is primarily for, *inter alia*, a personal or household purpose; the debt is payable in installments or a loan finance charge; and either the principal is no greater than $45,000 or the debt is secured by an interest in land. W.Va. Code § 46A-1-102(15). Here, Defendant is engaged in making loans, Plaintiffs are individuals who procured the loan to purchase lots to be used for personal retirement purposes, the debt is payable in installments, and the loan is secured by an interest in land.

*Violations of W.Va. Code § 46A-2-105(2)*. W.Va. Code § 46A–2–105(2) requires that loan documents including balloon payment provisions, meaning a payment that is "at least twice as large as the smallest of all earlier scheduled payments," "contain language in form and substance substantially similar to the following: THIS CONTRACT IS NOT PAYABLE IN

13

INSTALLMENTS OR EQUAL AMOUNTS . . . AN INSTALLMENT OF $ . . . WILL BE DUE ON . . . ." Because the statute mandates the practice, "strict compliance is required." *Mallory v. Mortg. Am., Inc.*, 67 F.Supp.2d 601, 608 (S.D.W.Va. 1999). The language relating to the balloon payment must be "set forth either in the manner or with the prominence required by the statute that was designed to bring home to the borrower the extraordinary payment that must some day be met." *Id.* at 608–09.

Plaintiffs here allege that they were subject to a balloon payment of $46,243 on September 1, 2018. This amount is more than two times their monthly payments of $608.70. Therefore, the Contract required the W.Va. Code § 46A-2-105(2) language or equivalent. However, Ms. Winner's affidavit states that Defendant did not provide "any disclosure regarding a balloon payment" on the mortgage loan. ECF No. 31-2 ¶ 7. Defendant is thus liable for violating W.Va. Code § 46A-2-105(2) by failing to include the specific balloon payment disclosure in the mortgage loan document.

*Violations of W.Va. Code § 46A-2-127.* W.Va. Code § 46A-2-127 further prohibits using a "fraudulent, deceptive or misleading representation" in collection efforts. Such conduct includes:"[a]ny false representation or implication of the character, extent or amount of a claim against a consumer, or of its status in any legal proceeding." W.Va. Code § 46A-2-127(d). In *Patrick v. PHH Mortgage Corporation*, the U.S. District Court for the Northern District of West Virginia concluded that plaintiffs had sufficiently alleged a violation by stating that the defendant sought to collect past due amounts that were not due, violating their agreement, and claimed default where it did not exist. 937 F.Supp.2d 773, 785 (N.D.W.Va. 2013). The allegations then supported that the defendant "improperly charged default interest [and] late fees" despite the plaintiffs complying with their mortgage agreement. *Id.* Similarly, the court in *Padgett v. OneWest*

14

concluded that the plaintiff's allegations that the defendant imposed late fees in violation of their agreement similarly stated a claim under W.Va. Code § 46A-2-127. No. 3:10–CV–08, 2010 WL 1539839, *11 (N.D.W.Va. Apr.19, 2010).

Here, Plaintiffs assert that Defendant misapplied the payments to improper accounts and generated inaccurate loan balances. ECF No. 31 at 11. In so doing, Defendant "misstated the balance of [Plaintiffs'] mortgage loan at least 71 times" by charging improper late fees. *Id.* Moreover, Defendant provided Plaintiffs with multiple right to cure letters, that contained balloon payment amounts different than those agreed upon, and with conflicting information about how to cure. *Id.* ¶¶ 42–44. Plaintiffs contend that Defendant then provided inaccurate loan balances, in the form of the balloon payment and late fees. ECF No. 31 at 9–13. Defendant's improper late fees and misappropriation of payments, as well as unclear balloon payment amounts, violated W.Va. Code § 46A-1-127.

*Violations of W.Va. Code § 46A-2-125.* Finally, W.Va. Code § 46A-2-125(a) prohibits "[t]he use of profane or obscene language or language that is intended to unreasonably abuse the hearer." Case law provides guidance on what constitutes such language. For instance, in *Seals v. General Revenue Corporation,* the court concluded that an attitude or tone in stating that a plaintiff should work at a McDonald's to pay his debt did not "rise to the level of abusive language." No. CIV.A. 5:01CV118, 2002 WL 32099632, at *2, *4 (N.D.W.Va. Aug. 19, 2002), *aff'd,* 53 F.App'x 286 (4th Cir. 2002). Similarly, statements including, "West Virginians like to have yard sales, so why don't you have a yard sale to make up the difference?" and also "Why did you buy the place if you can't make the payments?" were neither profane nor obscene. *Powell v. Bank of America,* 842 F.Supp.2d 966, 983 (S.D.W.Va. 2012). Condescending statements, the court explained, are not actionable as unreasonably abusive. *Id.*

15

Analogous provisions in the Fair Debt Collection Practices Act ("FDCPA") provide guidance where the West Virginia Supreme Court of Appeals has failed to address specific WVCCPA provisions in detail. *See Bourne v. Mapother & Mapother, P.S.C.*, 998 F.Supp.2d 495, 501 (S.D.W.Va. 2014). Regarding profane and obscene language, the equivalent FDCPA provision, 15 U.S.C. § 1692d, "deems certain non-exclusive activities to be '*per se* harassing' including the 'use or threats of use of violence, obscene or profane language, coercion, annoying repeated phone calls or phone calls where the caller is not identified, or noncompliant publications of certain debts.'" *Conteh v. Shamrock Cmty. Ass'n, Inc.*, No. BPG-14-794, 2015 WL 5177752, at *4 (D.Md. Sept. 3, 2015), *aff'd in part, vacated in part on other grounds,* 648 F.App'x 377 (4th Cir. 2016) (citations omitted). The provision "seeks to protect consumers from truly abusive language 'akin to profanity or obscenity,' such as 'name-calling, racial or ethnic slurs, and other derogatory remarks.'" *Woods v. Oxford L., LLC*, No. CIV.A. 2:13-6467, 2015 WL 778778, at *5 (S.D.W.Va. Feb. 24, 2015) (quoting *Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1178 (11th Cir.1985)).

Here, Plaintiffs allege two specific instances they contend violate the statute: (1) a Defendant employee "cavalierly" told Plaintiffs that the misapplied loan payments had become his "beer fund," and (2) a Defendant employee demanded that Plaintiffs "G**d*mn f****n' pay us off" during refinance negotiations. ECF No. 1 ¶¶ 29, 41, 118. Defendant's cavalier statement about beer money, like in *Powell*, may be condescending but it is neither obscene nor profane. *See* 842 F.Supp.2d at 983. The statement using expletives and directing Plaintiffs to pay Defendant off, while perhaps not name-calling or racial or ethnic slurs, is profanity according to its plain meaning,

which is its own prohibited category. *See Conteh*, 2015 WL 5177752, at \*4. As such, Defendant employee used profanity in directing Plaintiffs to pay the debt and violated the WVCCPA.[5]

### Count VI: Unjust Enrichment

In Count VI, Plaintiffs allege Defendant was unjustly enriched when it improperly foreclosed on the Lots at issue. ECF No. 1 ¶ 127. An unjust enrichment claim is a quasi-contract claim and thus will fail if an express contract exists between the parties that covers the subject matter of the claim. *Hebbeler v. First Mariner Bank*, No. CV ELH-17-3641, 2020 WL 1033586, at \*23 (D.Md. Mar. 2, 2020); *Janusz v. Gilliam*, 404 Md. 524, 537 (2008). Because Plaintiffs allege a mortgage loan agreement resulting in a Note and Deed of Trust that are central to this dispute, Plaintiffs' unjust enrichment claim fails. *See Hebbeler*, 2020 WL 1033586, at \*23.

### Count VII: Violations of the FCRA

In Count VII, Plaintiffs allege that Defendant violated the FCRA, which prohibits the furnishing of information about a consumer "to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). When notified of a dispute about the accuracy of information provided to the consumer reporting agency, the person must investigate the disputed information, review the relevant information provided by the consumer reporting agency, report the results of the investigation to the consumer reporting agency, and report any incomplete or inaccurate information to the consumer reporting agencies. *Id.* § 1681s-2(b)(1). To prevail, Plaintiffs must show: "(1) that [they] . . . notified the consumer reporting agency of the disputed information, (2) that the

---

[5] Plaintiffs allege Defendant violated additional provisions of the WVCCPA, but only allege statutory damages according to the three provisions identified in this opinion. *See* ECF No. 31 at 9–13, 17. Because the Court has found Defendant liable for violating the WVCCPA for such provisions, it need not consider the additional provisions alleged.

consumer reporting agency notified [Defendant] of the dispute, and (3) that [Defendant] then failed to investigate and modify the inaccurate information." *Id.* (citations omitted).

Plaintiffs here assert that Ms. Winner noticed a foreclosure on her credit report, disputed the report, and the credit report was updated to say the credit line had been "charged off" since March of 2020. ECF No. 1 ¶ 50–52. She then disputed the information again and demanded proof, which was not provided. *Id.* ¶¶ 53–54. According to Experian, when an account is "charged off" it means "the account is closed to future use, although the debt is still owed."[6] Even accepting Plaintiffs' alleged facts as true, Plaintiffs still have failed to show that Defendant is liable for failing to modify inaccurate information. The charge off occurred after Plaintiffs' balloon payment became due on September 1, 2018. Plaintiffs' balloon payment date was set prior to any issue with late fees or misappropriating payments.

While Plaintiffs state that the balloon payment communication was confusing and differed from the original agreement, they do not dispute that they owed a balloon payment and that they did not pay the balloon payment, including the amount they agreed to in the Note. Plaintiffs do not allege that they were entitled to forgo the balloon payment. Plaintiffs' assertions thus do not show the charge off resulted from the misappropriation of payments and late fees, as opposed to the expected balloon payment. Accordingly, Defendant is not liable for FCRA allegations.

Counts VIII–X: Class Allegations

Plaintiffs' Motion is notably silent on its class allegations in Counts VIII through X; however they still assert that they bring the Motion "individually and on behalf of all others similarly situated." *See* ECF No. 31 at 1. "[A]lthough a default judgment has the effect of deeming

---

[6] Experian, *What Does "Charge Off" Mean on a Credit Report* (Nov. 9, 2017), https://www.experian.com/blogs/ask-experian/what-does-charge-off-mean/.

all factual allegations in the complaint admitted, it does not also have the effect of 'admitting' the independent legal question of class certification." *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006) (citing *Davis v. Hutchins*, 321 F.3d 641, 648–49 (7th Cir. 2003)). The Court, therefore, cannot assume compliance with Rule 23. *Id.* at 340 (quoting *Gen. Tel. Co. of the Sw. v. Flacon,* 457 U.S. 147, 160 (1982)). Plaintiffs have thus not established Defendant's liability on any class allegation.

### D. Damages on Default Judgment

I turn now to appropriate damages under default judgment. "[I]f the Court determines that default judgment as to liability is appropriate, the Court must then determine the appropriate amount of damages." *Quan*, 2021 WL 4129115, at *1. The Court independently determines damages rather than accepting Plaintiffs' factual allegations of damages as true. *Id.* (citing *United States ex rel. Durrett-Sheppard Steel Co.*, 2012 WL 2446151, at *1). Absent a claim for liquidated damages Plaintiffs must support their damages calculation with an affidavit or other documentary evidence. *Id.* at *2. The Court may then rely such affidavits and documentary evidence to calculate damages. *Id.*

#### Actual Damages

Plaintiffs contend that they are entitled to $44,161.24 in actual and compensatory damages under Maryland Consumer Law and the MVCCPA. ECF No. 31 at 15. *See* Md. Code Ann., Com. Law § 13-408 (permitting recovery "for injury or loss sustained . . . as the result of a practice prohibited by this title"); W.Va. Code Ann. § 46A-5-101 (permitting recovery of actual damages). Furthermore, general damages for breach of contract include "the difference between the contract price and the fair market value at the time of breach." *Burson v. Simard*, 424 Md. 318, 327 (2012).

First, Plaintiffs allege—and support with a sworn affidavit—they were improperly charged $30.44 on 71 occasions for late fees that resulted from Defendant misapplying loan payments in violation of the agreement. ECF No. 1 ¶ 38; ECF No. 31-1 ¶ 11. Given the amount in late fees attested to and considering Defendant's liability, damages for the late fees total $2,161.24.

Next, Plaintiffs seek actual damages for the appreciated value of the Lots. General damages are proper for breach of contract. *See Burson*, 424 Md. at 327. Here, general damages are calculated by subtracting the contract price from the fair market value at the time of breach. Plaintiffs provide that each lot has been valued at $46,000 since December 2020. *See* ECF No. 31 at 16 n.57. The collective fair market value of the Lots is thus $92,000. The contract price for the Lots was $35,000 each, and $70,000 in total. *See* ECF No. 31-1. Therefore, the general damages for Defendant's breach of contract total $22,000.

Finally, Plaintiffs also seek emotional distress damages. While noneconomic damages are available under the MCPA, there must be a "consequential physical injury" such that it "is capable of objective determination." *Sager v. Hous. Comm'n of Anne Arundel Cty.*, 855 F.Supp.2d 524, 548–49 (D.Md. 2012) (citations omitted). *See Wheeling v. Selene Fin. LP*, 473 Md. 356, 366 (2021). Examples of physical injury that permit recover include:

> [S]uch things as depression, inability to work or perform routine household chores, loss of appetite, insomnia, nightmares, loss of weight, extreme nervousness and irritability, withdrawal from socialization, fainting, chest pains, headaches, and upset stomachs, but excludes recovery based on the plaintiff simply saying, 'This made me feel bad; this upset me.'

*Sager*, 855 F.Supp.2d 524, 549 (D.Md. 2012) (citations omitted).

The WVCCPA does not require the same physical injury showing, instead requiring Plaintiffs "reasonably and sufficiently explain the circumstances of [their] injury and not resort to mere conclusory statements." *Waddell v. Cap. Accts., LLC*, No. 2:19-CV-00122, 2019 WL

5792865, at *4 (S.D.W.Va. Nov. 5, 2019) (citations omitted). The Fourth Circuit has acknowledged that claims for emotional distress are "fraught with vagueness and speculation," thus are "easily susceptible to fictitious and trivial claims." *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 503 (4th Cir. 2007) (quoting *Price v. City of Charlotte*, 93 F.3d 1241, 1250 (4th Cir.1996)). Conclusory allegations of emotional distress are insufficient. *Waddell*, 2019 WL 5792865, at *4. *See Woods*, 2015 WL 778778, at *13 (explaining the same). As such, Plaintiffs must "reasonably and sufficiently explain the circumstances of [the] injury." *Id.* (alteration in original) (citations omitted).

Here, Plaintiffs allege no physical ailments that result from their emotional distress; accordingly they are not entitled to emotional distress damages under Maryland law. Plaintiffs' vague, conclusory allegations are similarly insufficient to warrant emotional distress damages under the WVCCPA. Plaintiffs' Motion states that they "experienced worry, embarrassment, humiliation, annoyance, and inconvenience." ECF No. 31 at 16. Plaintiffs' Complaint provides no greater detail, alleging only that Plaintiffs were "annoyed, inconvenienced, harassed, bothered, upset, angered, harangued, caused indignation and stress." ECF No. 1 ¶ 80, 94. Plaintiffs' statements do not "reasonably and sufficiently explain the circumstances of the injury" and are instead "mere conclusory statements." *See Sloane*, 510 F.3d at 503. Accordingly, Plaintiffs have not provided facts to support emotional distress damages. The total actual damage award Plaintiffs are entitled to is then $24,161.24.

 Statutory Damages

Plaintiffs further contend that they are entitled to $76,000 in statutory damages under the WVCCPA. The basis of statutory damages are one violation of W.Va. Code § 46A-2-105, 73 violations of W.Va. Code § 46A-2-127(d), and two violations of W.Va. Code § 46A-2-125(a).

"Upon a violation of the WVCCPA, a consumer is entitled to recover a penalty of up to $1,000 per violation."[7] *Cash N Go, Inc. v. Spruce*, No. 17-0311, 2018 WL 2175703, at *3 (W.Va. May 11, 2018) (quoting W.Va Code § 46A-5-101(1)). Such an award "does not violate the due process and excessive fines clauses of the West Virginia Constitution and United States Constitution absent an abuse of discretion by the [Court] awarding the civil penalty." *Id.* (citation omitted). "A separate penalty may be imposed for each WVCCPA violation." *Bourne*, 998 F.Supp.2d at 500.

Here, the Court concluded Defendant is liable for the following violations: one count of violating W.Va. Code § 46A-2-105; 73 counts of violating W.Va. Code § 46A-2-127(d); and one count of violating W.Va. Code § 46A-1-125(a). In total, Defendant's violations of the WVCCPA amount to statutory damages of $75,000.

### Punitive Damages

Plaintiffs assert that they are entitled to $25,000 in punitive damages as a result of Defendant's fraud. Defendant is not liable for fraud, therefore punitive damages are not warranted. To the extent that Plaintiffs seeks punitive damages under another theory of law, they have made no such cogent argument to the Court.

### Equitable Relief

Plaintiffs request that this Court require Defendant to contact credit reporting agencies to "delete the erroneous trade line reflecting the foreclosure and charge off Plaintiffs' loan." Because Plaintiffs failed to assert facts to show Defendant's liability under the FCRA, damages in the form of equitable relief are not warranted.[8]

---

[7] While this award may be adjusted for inflation, *see Bourne*, 998 F.Supp.2d at 500, Plaintiffs requested $1,000 per violation so the Court awards damages accordingly. *See* ECF No. 31 at 17.
[8] Moreover, it is unlikely that equitable relief is a proper remedy under the FRCA. *See Eseni v. RIMSI Corp.*, No. CV AW-07-2384, 2007 WL 9782599, at *4 (D.Md. Dec. 6, 2007).

Attorney's Fees and Costs

Finally, Plaintiffs requests reasonable attorney's fees pursuant to the MCPA and the WVCCPA. Each statute does allow for reasonable attorney's fees. *See* Md. Code Ann., Com. Law § 13-408; W.Va. Code, § 46A-5-104. Given Defendant's liability for violations of the MCPA and WVCCPA, reasonable attorney's fees are warranted. Plaintiffs are directed to file a motion for fees and costs in compliance with the Local Rules, Appendix B (D.Md. 2021).

CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court finds that the sanction of default judgment is appropriate against Defendant in light of its bad faith failure to comply with discovery requests and this Court's Orders. Plaintiffs' Motion (ECF No. 31) is thus GRANTED IN PART and DENIED IN PART. Plaintiffs have plead facts to support Defendant's liability for Count II: Breaches of Contract; Count III: Violations of Maryland Consumer Law (specifically the MCPA); and Count V: Violations of the WVCCPA. However, Plaintiffs have not plead facts sufficient to show Defendant's liability for Count I: Declaratory Judgment; Count IV: Fraud; Count VI: Unjust Enrichment; Count VII: Violations of the FCRA; and Counts VIII–X for Class Allegations. According to the Court's independent determination of damages, Plaintiffs are entitled to damages in the amount of $99,161.24 and reasonable attorney's fees. A separate Order will follow.

Date: _9 December 2021_

_____
A. David Copperthite
United States Magistrate Judge